UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ERIC POULIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PORTLAND PUBLIC SCHOOLS, and | ) |
| XAVIER BOTANA, individually, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**
**(Jury Trial Demanded)**

Plaintiff Eric Poulin complains against Defendants Portland Public Schools and Xavier Botana and demands a trial by jury as follows:

**INTRODUCTION**

This is an action brought by a former special education teacher against Portland Public Schools ("PPS") and former PPS Superintendent of Schools Xavier Botana pursuant to the anti-retaliation provisions of the First Amendment, the Maine Human Rights Act, 5 M.R.S. § 4633 ("MHRA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a); and against PPS for violation of the Maine Whistleblowers Protection Act, 26 M.R.S. § 833 ("MWPA").

**PARTIES, JURISDICTION, and VENUE**

1.  Plaintiff Eric Poulin resides in Windham, Maine.

2.  Defendant PPS is a political and administrative subdivision of the City of Portland, Maine. It employed Plaintiff from November 2020 to August 31, 2022.

3. At all material times relative to the allegations herein, Defendant Xavier Botana was the Portland Public Schools' Superintendent.

4. Jurisdiction is proper under 28 U.S.C. § 1331 (Federal Question).

5. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Maine. Under Rule 3(b) of the Rules of this Court, this action is properly filed in Portland because Defendants' principal place of business is in Cumberland County and Plaintiff has resided in Cumberland County during the period of time in which the events at issue occurred.

6. Plaintiff has exhausted and complied with all administrative pre-requisites prior to filing suit, including (for Counts II-IV), obtaining a Notice of Right to Sue from the Maine Human Rights Commission on March 27, 2023.

## FACTS COMMON TO ALL COUNTS

7. Plaintiff has taught special education since 2008.

8. Plaintiff worked as a special education teacher for both the Windham (Maine) and Gorham (Maine) School Departments between 2008 and 2020.

9. On November 9, 2020, in the midst of the COVID-19 pandemic, Defendant PPS hired Plaintiff as a special education teacher at Ocean Ave. School.

10. At Ocean Ave. School, Plaintiff taught students with Autism and other developmental disabilities. PPS placed these students at Ocean Ave. School to participate in the "Beach" program, an acronym for its mission to meet "Behavioral, Emotional, Academic, Communication, and Hygienic" needs of students.

11. All of the students participating in the Beach program received special education and related services pursuant to each student's Individualized Education Plan, or "IEP," as guaranteed and protected under state and federal laws.

12. Plaintiff supervised special education staff members at the Ocean Ave. School, including several Education Technicians ("Ed Techs") who worked directly with students in Plaintiff's K-1 classroom.

13. Benjamin Conroy worked as an Ed Tech in Plaintiff's K-1 Beach program classroom for the first part of the 2021-22 academic year.

14. Between July and early October of 2021, Plaintiff made several complaints and reports to PPS supervisors and administrators about staffing shortages at Ocean Ave. School and expressed his concerns that such staff shortages created a potential risk of harm to the health and safety of his students.

15. PPS administrators did not respond to Plaintiff's complaints.

16. On October 8, 2021, Portland Police arrested Benjamin Conroy on several felony charges, including sexual exploitation of a minor, dissemination and possession of sexually explicit material, and unlawful sexual contact with a minor.

17. The minor victim was a student in Plaintiff's classroom.

18. On October 14, 2021, the Portland Press Herald ("PPH") published an article entitled "*Ed Tech at Portland school charged with multiple sex crimes.*"[1]

19. Also on October 14, 2021, Defendant Botana appeared on local television programs to discuss the arrest and PPS's response.

---

[1] https://www.pressherald.com/2021/10/14/portland-school-employee-arrested-in-multiple-sex-crime-cases/

20. Soon after October 14, 2021, PPS engaged a Portland-based consulting firm, Dirigo Consulting, to conduct an investigation into the K-12 Beach program.

21. On October 17, 2021, Plaintiff sent an email to the parent of the victim to express sympathy and pledge his support for the victim and their family.

22. In an email on October 20, 2021, PPS Director of Special Services Jesse Applegate criticized Plaintiff for sending the email to the mother of the victim, stating that he and another PPS administrator "met with [the victim's] mother and [the mother's] lawyer" and directed him to refrain from contacting the family.

23. On October 25, 2021, Plaintiff sent an email to Mr. Applegate, Ocean Ave. School Principal Beverly Stevens, and PPS Assistant Director of Special Services Julie Kirby regarding Mr. Applegate's email, about Plaintiff's (previously stated) concerns about staffing shortages vis-a-vis the health and safety of his students, and Plaintiff's concerns with, and objections to, Defendant Botana's and PPS's public response to the circumstances surrounding Mr. Conroy's arrest.

24. Plaintiff was particularly concerned about Defendant Botana's public statements, which Plaintiff characterized in an email to his supervisors as "less than truthful" and "misleading" relative to staff-to-student ratios and Defendant Botana's statement that Conroy was "never alone with [the victim] as a result of staffing shortages." Plaintiff offered to share data he had compiled about staff-to-student ratios to illustrate his concerns and address the problem.

25. Neither Mr. Applegate nor PPS administrators responded to Plaintiff's offer to share data or expressed any interest in seeing or hearing about the data.

26. Several of Plaintiff's colleagues shared Plaintiff's concerns about staff shortages and risks to the health and safety of Beach program students.

27. On November 8, 2021, Mr. Applegate and PPS Human Resources officer Richard Moore met with Plaintiff regarding Plaintiff's October 17, 2021 email to the victim's mother. During this meeting, Plaintiff again raised his concerns about staffing shortages and his concerns about student health and safety, and again attempted to show Mr. Applegate and Mr. Moore the data reflecting the nature and extent of the staffing shortages.

28. Neither Mr. Applegate nor Mr. Moore responded to Plaintiff's offer to share data or expressed any interest in seeing or hearing about the data.

29. On November 17, 2021, Mr. Applegate issued a "letter of instruction" to Plaintiff, which, among other things, characterized Plaintiff as "oppositional," "uncooperative," and "pre-occupied with staffing."

30. On December 9, 2021 and December 15, 2021, Dirigo Consulting issued two reports which were focused exclusively on, and highly critical of, the K-1 Beach program, and of Plaintiff in particular, despite the fact that Dirigo was engaged to review all of the Beach programs ranging from Kindergarten through Grade 12.

31. Between January 24, 2022 and February 2, 2022, Plaintiff exchanged several email messages with Defendant Botana regarding the October 14, 2021 PPH article and in connection with PPH's Freedom of Access request.

32. Plaintiff was honest and direct in his exchanges with Defendant Botana. Plaintiff not only reiterated his concerns about staffing shortages (and the

risks to student health and safety associated with those staffing shortages), but also challenged the substance and credibility of his responses to the media.

33. On February 9, 2022, Assistant Director of Special Services Julie Kirby conducted a classroom evaluation of Plaintiff.

34. On February 17, 2022, PPH reporter Rachel Ohm exchanged email messages with PPS Communications Director Tess Nacalewicz and others in connection with a forthcoming article. The email implied that she had learned information which was highly critical of PPS from an unidentified "source."

35. PPS, and in particular Defendant Botana, knew that Plaintiff and some of his colleagues were among Ms. Ohm's sources.

36. Minutes after Ms. Ohm's email, Ms. Nacelwicz wrote Defendant Botana to inform him of Ms. Ohm's email and her reference to the unnamed source.

37. At approximately 9:50 p.m. on February 17, 2022, Defendant Botana wrote an email to the Beach program staff, including Plaintiff, which both criticized and warned them not so share information with Ms. Ohm.

38. On February 20, 2022, PPH published on its front page a lengthy article entitled "*Educators in Portland autism classroom say staffing challenges are safety concern*."[2] In addition to being featured prominently throughout the front-page article, Plaintiff and four colleagues appeared in a front-page photo, the caption of which noted that Plaintiff and his colleagues were "concerned about staffing levels and lack of support from administration."

---

[2] https://www.pressherald.com/2022/02/20/for-educators-in-portland-autism-classroom-staffing-challenges-are-a-safety-concern/

39. The February 20, 2022 PPH article provides details and quotes from Plaintiff and his colleagues about the repeated and unaddressed concerns over staff shortages, that PPS administrators ignored those concerns as well as Plaintiff's offer to share data about staff shortages, and PPS's critical responses in the November 17 "letter of instruction" to Plaintiff, among other facts.

40. On March 17, 2022, Plaintiff met with Ms. Kirby, who shared her evaluation report stemming from her classroom observation. The report noted that Plaintiff "needs improvement" in 83% (15 of 18) of the component categories.

41. Prior to this evaluation report, PPS had never expressed concern or dissatisfaction with Plaintiff's performance or skill set.

42. Plaintiff provided a detailed response to Ms. Kirby's review, and wrote:

*"I believe this negative evaluative feedback is due to an ongoing effort to marginalize and retaliate against me for raising concerns about safety in the Beach Program, particularly regarding understaffing as it relates to the alleged crime Ben Conroy committed in October 2021. I believe this review is part of a campaign by administrators to retaliate against me for engaging in whistleblower activities."*

43. Shortly after Plaintiff's retaliation complaint, PPS hired Portland attorney Eric Uhl to conduct an investigation into Plaintiff's allegations.

44. On April 13, 2022, PPS informed Plaintiff that decisions about his future employment with PPS will be made <u>after</u> Mr. Uhl completed his investigation.

45. On April 22, 2022, Mr. Uhl issued his investigation report. Among other findings, Mr. Uhl found that Plaintiff had in fact engaged in "protected activity" but had not (yet) been subjected to "adverse action."

46. On April 29, 2022, Mr. Applegate met with Plaintiff to discuss and decide on the "renewal" or "non-renewal" of Plaintiff's teaching contract.

47. On May 6 2022, Defendant Botana notified Plaintiff that his teaching contract would not be renewed and that his employment with PPS would be terminated on August 31, 2022.

## Count I
## 42 U.S.C. § 1983
## First Amendment Retaliation vs. PPS and Botana

48. Plaintiff repeats the allegations contained in Paragraphs 1 through 47.

49. Title 42 U.S.C. § 1983 provides a cause of action against <u>any person</u> who, acting under the color of law, deprives an individual of any rights, privileges, or immunities secured by the Constitution and the laws of the United States.

50. Under the First Amendment to the United States Constitution, a citizen has the right to free expression of his views and it is unlawful for a public employer to retaliate against him for engaging in such protected speech or activity.

51. As set forth above, Plaintiff was engaged in constitutionally protected activity. Defendants' actions against Plaintiff were retaliatory and would chill a person of ordinary firmness from continuing to engage in the protected activity.

52. Defendants, acting under the color of state law, violated Plaintiff's First Amendment rights by retaliating against him and terminating his employment.

53. While exercising his First Amendment rights, Plaintiff was speaking as a private citizen on a matter of public concern; his interests, as a citizen, in commenting upon matters of public concern outweighed Defendants' interest in

promoting the efficiency of the public services it performs through its employees; and Plaintiff's protected expression was a substantial or motivating factor in Defendants' adverse employment decision, i.e., terminating Plaintiff's employment.

54. As a direct and proximate result of Defendants' acts and omissions, Plaintiff sustained damages in an amount to be determined at trial.

**Count II**
**5 M.R.S. § 4633**
**Retaliation, Interference, Coercion, Intimidation vs. PPS and Botana**

55. Plaintiff repeats and re-alleges the foregoing paragraphs 1-54.

56. The MHRA, 5 M.R.S. § 4633, prohibits <u>any person</u> from discriminating against any individual because he has opposed any act or practice that is unlawful under the MHRA or because he assisted or participated in an investigation under the MHRA; it also prohibits any person from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of rights granted under the MHRA, or has aided or encouraged another person in the exercise of such rights.

57. As set forth above, Plaintiff engaged in activity protected by the MHRA and was subjected to adverse employment action because of his engagement in such protected activity and/or because of his oppositional conduct.

58. As a direct and proximate result of Defendants' acts and omissions, Plaintiff sustained damages in an amount to be determined at trial.

**Count III**
**42 U.S.C. § 2000e-3(a)**
**Retaliation, Interference, Coercion, Intimidation vs. PPS and Botana**

59. Plaintiff repeats and re-alleges the foregoing paragraphs 1-58.

60. Title VII, 42 U.S.C. § 2000e-3(a), prohibits <u>any person</u> from discriminating against an individual because he has opposed unlawful employment practices or because he assisted or participated in a Title VII investigation.

61. As set forth above, Plaintiff engaged in activity protected by Title VII and was subjected to adverse employment action because of his engagement in such protected activity and/or because of his oppositional conduct.

62. As a direct and proximate result of Defendants' acts and omissions, Plaintiff sustained damages in an amount to be determined at trial.

### Count IV
**26 M.R.S. § 833**
**Whistleblower Retaliation vs. PPS**

63. Plaintiff repeats and re-alleges the foregoing paragraphs 1-62.

64. The MWPA, 26 M.R.S. § 833, prohibits <u>an employer</u> from discharging, threatening, or otherwise discriminating against an employee because (a) the employee, acting in good faith, reports to the employer what he has reasonable cause to believe is a violation of a state or federal law or rule; (b) the employee, acting in good faith, reports to the employer what he has reasonable cause to believe is a condition or practice that would put at risk the health or safety of that employee or any other individual; or (c) the employee is requested to participate in an investigation, hearing or inquiry held by that public body.

65. As set forth above, Plaintiff engaged in activity protected by the MWPA and was subjected to adverse employment action because of his engagement in protected activity and/or because of his oppositional conduct.

66. As a direct and proximate result of Defendant PPS's acts and omissions, Plaintiff sustained damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Enter judgment in his favor and award him pecuniary and non-pecuniary compensatory damages; lost income and back pay; front pay in lieu of reinstatement; plus pre-judgement and post-judgment interest;

B. Award him punitive damages on Counts I-III arising out of Defendant Botana's willful and malicious misconduct; and

C. Award Plaintiff reimbursement of his costs of suit, including reasonable attorneys' fees and other costs incurred in bringing this action; and

D. Grant him such further relief as the Court may deem just and proper.

Dated: April 26, 2023

*/s/ James A. Clifford*
James A. Clifford
james@cliffordclifford.com

*/s/ Andrew P. Cotter*
Andrew P. Cotter
andrew@cliffordclifford.com

CLIFFORD & CLIFFORD, LLC
10 Moulton Street, 5th Floor
Portland, ME 04101
(207) 613-9465